IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY V. WILLIAMS<br><br>    Plaintiff,<br><br>  v.<br><br>KYW-TV<br>  and<br>CBS CORPORATION<br>  and<br>VIACOM, INC.<br><br>    Defendants. | CIVIL ACTION NO. 02-3183 |

## ANSWER TO AMENDED COMPLAINT

Defendants, KYW-TV, CBS Corporation and Viacom, Inc. ("Defendants"), answering the plaintiff's Amended Complaint dated May 15, 2002, state as follows:

Defendants deny the allegations contained in the preliminary paragraph, except admit that plaintiff's Amended Complaint purports to assert claims under Title VII, the ADEA, the PHRA, and §1981.

1. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, except admit that plaintiff is employed at Station KYW-TV.

2. Deny the allegations contained in paragraph 2 of the Complaint.

3. Deny the allegations contained in paragraph 3 of the Complaint.

4. Admit the allegations contained in the first sentence in paragraph 4 and deny the allegations contained in the second sentence of paragraph 4 of the Complaint.

5. Deny knowledge or information regarding the allegations contained in paragraph 5 of the Complaint, except admit that Ms. Williams filed complaints with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission which speak for themselves.

6. Admit upon information and belief the allegations contained in paragraph 6 of the Complaint.

7. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7, except deny that Ms. Williams holds a master's degree from Columbia University.

8. Admit the allegations contained in paragraph 8.

9. Deny the allegations contained in paragraph 9 of the Complaint.

10. Deny the allegations contained in paragraph 10 of the Complaint, except admit that plaintiff was a weekday prime-time news anchor on KYW-TV from 1989 to 1991, and a weekend anchor from October 1991 to February 1999.

11. Deny the allegations contained in paragraph 11.

12. Deny the allegations contained in paragraph 12.

13. Deny the allegations contained in paragraph 13.

14. Deny the allegations contained in paragraph 14.

15. Deny knowledge or information sufficient to form belief as to the truth of the allegations contained in paragraph 15, except admit that plaintiff returned to KYW-TV in August

1989 under the terms of a written employment contract which speaks for itself and that she was then 42 years old and deny knowledge or information sufficient to form a belief as to Mr. Bell's age.

16. Deny the allegations contained in paragraph 16.

17. Deny the allegations contained in paragraph 17, except admit that in 1992 plaintiff was age 45, her annual salary was $216,000, and she was reassigned from weekday prime time anchor to weekend anchor.

18. Deny the allegations contained in paragraph 18 except admit that in 1997, plaintiff was 50 years of age. Sometime in the 1990's, Ms. Williams was stopped from doing weekday back-up anchor work.

19. Deny the allegations contained in paragraph 19, except o admit that during 1998 different individuals anchored or co-anchored the prime-time weekday newscast at KYW-TV, including Trina Robinson, Ukee Washington, Dawn Stensland, and Dave Frankel [that the co-anchor position was not posted] and that plaintiff was not considered for the position.

20. Deny the allegations contained in paragraph 20, except admit that in or about December 1998, Mr. Cheatwood, then KYW-TV News Director, told plaintiff that after her contract expired, and effective February 1999, plaintiff would no longer work as weekend anchor and that plaintiff agreed that effective January 6, 1999, she would work as a senior correspondent at an annual salary of $155,000 doing stories for the new Hard Look franchise.

21. Deny the allegations contained in paragraph 21, except admit that Mr. Cheatwood was not satisfied with plaintiff's performance as a news anchor.

22. Deny the allegations contained in paragraph 22, except admit that in or about September 1999, Mr. Scott and Ms. Saunders were selected to serve as weekend prime time anchors, and that Mr. Scott is a white man then in his 40's and that Ms. Saunders is an African-American woman then in her 30's.

23. Deny the allegations contained in paragraph 23, except admit that Alice Ballard, Esq. sent a letter dated April 7, 1999 to KYW-TV, which speaks for itself.

24. Deny the allegations contained in paragraph 24.

25. Deny the allegations contained in paragraph 25.

26. Deny the allegations contained in paragraph 26, except admit that Ms. Robinson's contract was not renewed.

27. Deny the allegations contained in paragraph 27, except admit that Alice Ballard, Esq. wrote a letter dated April 7, 1999 to Station KYW-TV, and direct the Court to the letter for its contents.

28. Deny the allegations contained in paragraph 28, except admit that plaintiff was not interviewed or hired for the prime time weekday news anchor position vacated by Trina Robinson.

29. Deny the allegations contained in paragraph 29, except admit that on or about April 14, 1999, KYW-TV hired Siani Lee, an Asian-American woman then in her 30's, and that Ms. Lee co-anchored the prime time weekday news broadcast with Mr. Frankel.

30. Deny the allegations contained in paragraph 30.

31. Deny the allegations contained in paragraph 31.

32. Deny the allegations contained in paragraph 32.

33. Deny the allegations contained in paragraph 33, except admit that Ms. Williams did not participate in the April 28, 1999 Race for the Cure because she was no longer an anchor.

34. Deny the allegations contained in paragraph 34, except admit that from time to time, stories submitted by Ms. Williams were not aired.

   (a) Deny the allegations contained in subparagraph (a) of paragraph 34, except admit that in or about May 1999, plaintiff submitted a story on gun control and the National Rifle Association, which did not air.

   (b) Deny the allegations contained in subparagraph (b) of paragraph 34, except admit that in or about May 1999, plaintiff submitted a story about a woman whose mortgage was foreclosed, which was not aired.

   (c) Deny the allegations contained in subparagraph (c) of paragraph 34, except admit that in or about May 1999, a story plaintiff completed about Victoria Manor Nursing Home was not aired.

35. Deny the allegations contained in paragraph 35.

36. Deny the allegations contained in paragraph 36.

37. Deny the allegations contained in paragraph 37.

38. Deny the allegations contained in paragraph 38.

39. Deny the allegations contained in paragraph 39.

40. Deny the allegations contained in paragraph 40.

41. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41.

42. Admit the allegations contained in paragraph 42.

43. Deny the allegations contained in paragraph 43.

44. Deny the allegations of paragraph 44, except admit that when Ms. Russell and Mr. Bell left KYW-TV, the job of supervising Ms. Williams was reassigned to Rich Edwards.

45. Deny the allegations contained in paragraph 45.

46. Deny the allegations contained in paragraph 46, except admit that plaintiff did not attend a sales luncheon was held at the Garden Restaurant in or about December 1999.

47. Deny the allegations contained in paragraph 47.

48. Deny the allegations contained in paragraph 48, except admit that on December 31, 1999, Ms. Williams was scheduled to work at night and that Paul Moriarty and Stephanie Stahl were not scheduled to work at night.

49. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.

50. Deny the allegations contained in paragraph 50.

51. Deny the allegations contained in paragraph 51, except admit that KYW-TV did not invite all its female reporters to participate in the May 2000 Race for the Cure.

52. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52.

53. Deny the allegations contained in paragraph 53.

54. Deny the allegations contained in paragraph 54, except admit that in or about June 2000, plaintiff worked on a story about possible surveillance of an organization known as the Women's International League for Peace and Freedom ("WILPF").

55. Deny the allegations contained in paragraph 55, except admit that plaintiff had permission to pursue background investigation on a story about possible surveillance of the WILPF.

56. Deny the allegations contained in paragraph 56, except admit that on or about June 28, 2000, KYW-TV aired the story about possible surveillance of the WILPF.

57. Deny the allegations contained in paragraph 57, except deny sufficient knowledge or information as to whether stories about surveillance of the WILPF appeared in the Philadelphia Inquirer and on Channel 6 News.

58. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58.

59. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59.

60. Deny the allegations contained in paragraph 60, except admit that plaintiff told Ms. Klinzing that plaintiff obtained information from confidential sources that surveillance was being conducted by Civil Affairs officers.

61. Deny the allegations contained in paragraph 61.

62. Deny the allegations contained in paragraph 62.

63. Deny the allegations contained in paragraph 63, except admit that Eleanor Jean Hendly is a franchise reporter at KYW-TV and admit that a production assistant was hired by the station in October 2000.

64. Deny the allegations contained in paragraph 64, except admit that on or about December 21, 2001, Ms. Schiller received a written memo from Ms. Williams, and to direct the Court to the memo for its contents.

65. Admit the allegations contained in paragraph 65.

66. Deny the allegations contained in paragraph 66, except admit that Ms. Williams wrote a memo to Ms. Schiller dated December 21, 2000, and direct the Court to the memo for its contents.

67. Deny the allegations contained in paragraph 67, except admit that on or about February 18, 2002, Ms. Williams and Ms. Horne had a dispute.

68. Admit the allegations contained in paragraph 68.

69. Deny the allegations contained in paragraph 69.

70. Deny the allegations contained in paragraph 70.

71. Deny the allegations contained in paragraph 71.

72. Deny the allegations contained in paragraph 72.

73. Repeat and reallege each and every response to the allegations contained in paragraphs 1-70 as though fully set forth herein.

74. The allegations contained in paragraph 74 assert legal conclusions to which no response is required.

75. Deny the allegations contained in paragraph 75.

76. Deny the allegations contained in paragraph 76.

77. Deny the allegations contained in paragraph 77.

78. Deny the allegations contained in paragraph 78.

79. Defendants repeat and reallege each and every response to the allegations contained in paragraphs 1-76 as though fully set forth herein.

80. The allegations contained in paragraph 80 assert legal conclusions to which no response is required.

81. Deny the allegations contained in paragraph 81.

82. Deny the allegations contained in paragraph 82.

83. Deny the allegations contained in paragraph 83.

84. Repeat and reallege each and every response to the allegations contained in paragraphs 1-81 as though fully set forth herein.

85. The allegations contained in paragraph 85 assert legal conclusions to which no response is required.

86. Deny the allegations contained in paragraph 86.

87. Deny the allegations contained in paragraph 87.

88. Deny the allegations contained in paragraph 88.

### FIRST AFFIRMATIVE DEFENSE

89. The Complaint fails to state a claim up on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

90. The Complaint is barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

91. Plaintiff is estopped and barred by her own conduct from recovering any relief.

## FOURTH AFFIRMATIVE DEFENSE

92. The Complaint fails to state a claim up on which an award of punitive damages may be granted.

## FIFTH AFFIRMATIVE DEFENSE

93. Defendants relied on legitimate non-discriminatory, non-retaliatory factors with respect to any action taken concerning plaintiff's employment.

## SIXTH AFFIRMATIVE DEFENSE

94. The Complaint is barred in whole or in part by laches and/or unreasonable delay on the part of plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

95. Plaintiff's damages, if any, are barred or reduced by plaintiff's failure to mitigate.

## EIGHTH AFFIRMATIVE DEFENSE

96. The Complaint fails to state a claim upon which an award of compensatory damages may be granted.

## NINTH AFFIRMATIVE DEFENSE

97. Plaintiff's claims for damages are time-barred by the exclusive remedy of the workers compensation law.

WHEREFORE, defendants demand judgment dismissing the amended complaint with prejudice and granting defendants their costs, including attorneys' fees in this action, and such other relief as the Court deems proper.

Dated:   June 13, 2002

PROSKAUER ROSE LLP

By: *(signature)*
Bettina B. Plevan
1585 Broadway
New York, NY 10036
(212) 969-3065

Vernon L. Francis
DECHERT
4000 Bell Atlantic Towers
1717 Arch Street
Philadelphia, PA 19103
(215) 994-2577

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that defendants' Answer to plaintiff's Amended Complaint was served this date upon:

>Patricia v. Pierce, Esq.
>Willig, Williams & Davidson
>1845 Walnut Street, 24th Floor
>Philadelphia, PA 19103
>
>Alice W. Ballard, Esq.
>Law Office of Alice W. Ballard, P.C.
>225 South 15th Street, Suite 1700
>Philadelphia, PA 19102
>
>Attorneys for Plaintiff

by regular mail.

Dated: June 13, 2002

_____
Bettina B. Plevan