**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BEVERLY V. WILLIAMS | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KYW-TV | : | |
| and | : | |
| CBS CORPORATION | : | |
| and | : | NO. 02-3183 |
| VIACOM, INC. | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this ____ day of _____, 2002, after consideration of Plaintiff's Motion to Remand, and the Defendants' Response thereto, IT IS HEREBY ORDERED that the Motion is DENIED.

_____
Eduardo C. Robreno, J.

776398.1.50 07/08/02 3:53 PM

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| BEVERLY V. WILLIAMS | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KYW-TV | : | |
| and | : | |
| CBS CORPORATION | : | |
| and | : | NO. 02-3183 |
| VIACOM, INC. | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Plaintiff Beverly Williams filed a motion to remand this discrimination case back to the Philadelphia Court of Common Pleas, claiming that it was improvidently removed. Because removal was legally proper and justified under the circumstances, defendants ask that the motion to remand be denied.

We begin with what is undisputed. It is undisputed that the federal courts have subject matter jurisdiction over this case. In her Amended Complaint, plaintiff relies on three federal statutes, including Title VII (age, race and gender discrimination), the Age Discrimination in Employment Act, (age discrimination), and 42 U.S.C. § 1981 (race discrimination). Thus, the Amended Complaint raises <u>federal</u> claims which are properly decided by a <u>federal</u> court, with its expertise in interpreting and applying <u>federal</u> law.

1

It is also undisputed that none of these claims were pleaded in a complaint until May 2002, that the complaint was not served on defendants until May 15, 2002, and that defendants removed the case within days of receiving it.  Plaintiff says, however, that the defendants should have removed the case in November 2000 because, when she filed her writ of summons, the civil cover sheet accompanying the summons indicated that she <u>might</u> assert a claim for race discrimination under 42 U.S.C. § 1981.  The civil cover sheet, which, according to the rule which created it, is not a pleading and may not be used as evidence of the nature of the plaintiff's claims, provides almost no information about the true nature of plaintiff's claims -- it references a common law tort claim that was not even alleged once the Complaint was filed.  And it says nothing about age discrimination, gender discrimination, Title VII or the ADEA.  In fact, plaintiff admits that her claims under Title VII and the ADEA <u>could not have been asserted</u> until May 9, 2002 when she received her right to sue letters from the EEOC.  Nevertheless, plaintiff claims that the defendants' removal was untimely.

Plaintiff's argument runs counter to two important federal principles, each of which calls for the denial of her motion to remand.  First of all, the plaintiff's indication on an administrative cover sheet that she might plead a claim under 42 U.S.C. § 1981 did not create a claim "arising under" federal law.  It has been firmly established for 100 years that, in a federal question case such as this one, the "well-pleaded complaint rule" prohibits removal unless and until a federal question appears on the face of the plaintiff's properly pleaded <u>complaint</u>.  Thus, until the plaintiff filed a complaint which, on its face, pleaded claims arising under federal law, there were no federal claims to remove and any removal would have been premature.

Moreover, even if the civil cover sheet could be said to have put the defendants on notice that the plaintiff might file a claim under § 1981, the Amended Complaint actually filed is radically different.  Section 1981 is limited to claims alleging <u>race</u> discrimination.  But in the Amended Complaint the plaintiff invokes two different federal statutes to assert gender and age discrimination claims -- claims that Ms. Williams admits could not have been asserted until May 9, 2002.  It is well settled that, "[A]lthough a defendant has submitted to state court jurisdiction on one cause of action, this does not prevent him from removing the cause when an entirely new and different cause of action is filed [in the same case.]"  <u>Johnson v. Heublein, Inc.</u>, 227 F.3d 236, 242 (5th Cir. 2000).  Because "race discrimination and gender discrimination are two very different things," <u>Johnston v. City of Philadelphia</u>, 158 F.R.D. 352, 354 (E.D. Pa. 1994), the defendants had thirty days from the date of the Amended Complaint to remove the case.

## BACKGROUND

On November 28, 2000, plaintiff Beverly Williams filed a writ of summons in the Court of Common Pleas, Philadelphia County.  Exh. 1.  The writ she filed says nothing about the plaintiff's claims; it merely states that "[y]ou are notified that the plaintiff Beverly V. Williams has . . . commenced an action against you."  <u>Id.</u>  When she filed her writ of summons, the plaintiff filled out a "civil cover sheet" as required by Philadelphia Local Rule of Civil Procedure 205.2(A)(9).  Exh. 2.  The civil cover sheet by operation of local rules is an administrative document that is not a pleading and is not admissible in any proceeding:

> *Not Part of Pleading.*  The information provided in the Civil Cover
> Sheet shall not be considered a pleading and shall not be
> admissible at any trial in the matter.  If the initial pleading is
> introduced into evidence at any trial or hearing of the case, the

Civil Cover Sheet may be removed at the request of any party and
such removal shall not be the subject of objection.

Philadelphia Loc. R. Civ. P. 205.2(A)(9)(b).

On the civil cover sheet in this case, the plaintiff described her claim as
"Employment Discrimination:  Intentional & Negligent Infliction of Emotional Distress."  Exh.
3.  Below that description, the plaintiff cites to two statutes:  "43 PCSA Section 951, et. seq.:  42
USC Section 1981."  Id.  The plaintiff must concede that she was under no obligation to actually
assert any of these claims upon filing a complaint -- in fact, when she did file a complaint, it did
not include any claim for "Intentional & Negligent Infliction of Emotional Distress."

When the plaintiff served the writ of summons in November of 2000, the parties
were attempting to resolve the dispute between them, initially under the auspices of the
Pennsylvania Human Relations Commission and later with the assistance of a private mediator.
The parties were still in the midst of the PHRC's proceedings at the time the writ was filed.
Plaintiff filed her first complaint with the PHRC in November of 1999 and filed her writ a year
later in November 2000.  Plaintiff later filed two more administrative complaints as part of this
administrative proceeding.  During this time, the parties continued to make efforts to resolve the
dispute through mediation and settlement negotiations and plaintiff never amended her writ in
any way.

Settlement discussions broke down in March of 2002, and it became clear that the
parties would need to pursue litigation.  Defense counsel immediately wrote to plaintiff's counsel
and asked the plaintiff to "promptly" file a complaint.  Exh. 4.  Because the plaintiff did not file a
complaint, the defendants formally "ruled" her to do so.  Exh. 5.  On May 13, 2002, the plaintiff

4

apparently filed a complaint, but she did not serve the complaint on the defendants.  On May 15,

2002, the plaintiff filed an "Amended Complaint," which included claims under three federal

statutes:  "Race, Gender and Age Discrimination" under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. (Count I); "Race Discrimination" under 42 U.S.C. § 1981

(Count II); and "Age Discrimination" under the Age Discrimination in Employment Act, 29

U.S.C. §§ 621-34 (Count III).

Seven days after plaintiff's amended complaint was filed, on May 23, 2002, the

defendants removed this action to federal court pursuant to 28 U.S.C. § 1446.  Prior to removal,

the Court of Common Pleas had decided a single, non-substantive, uncontested motion -- a

motion admitting defendants' New York City attorney as counsel pro hac vice.  While the parties

had engaged in some discovery prior to removal, there have been no substantive proceedings to

date.[1]  Defendants removal of this case will have absolutely no effect on the plaintiff's ability to

prepare her case for trial.

## ARGUMENT

Federal courts have jurisdiction over claims arising under federal law.  See 28

U.S.C. § 1331.  Where a claim arising under federal law is asserted in a state court, a defendant

may remove the action to the appropriate federal court.  28 U.S.C. § 1446.  The plaintiff does not

dispute that this Court has subject matter jurisdiction over the claims presented in this lawsuit.

---

[1]     Plaintiff suggests in her motion that the defendants removed the case to avoid a hearing
on her motion to compel.  Plaintiff's Br. at 5-6.  The suggestion makes little sense:  how
can any tactical advantage have accrued to the defendants when all plaintiff needs to do
to pursue the motion is re-file it in this Court?

The only question is whether the defendants were required to remove the case before those claims were actually asserted in a properly pleaded complaint.

The removal statute requires that a defendant remove a case within thirty days of the initial pleading setting forth a basis for federal jurisdiction:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable .
> . . .

28 U.S.C. § 1446(b).

Ms. Williams makes three arguments as to why the defendants were required to remove this action before she filed a complaint.  First, she claims that by inserting a reference to 42 U.S.C. § 1981 on the civil cover sheet accompanying the writ of summons, she made the case removable in November of 2000.  Second, she claims that by allegedly telling the defendants that she might bring a claim under 42 U.S.C. § 1981 for race discrimination, the defendants were required to remove a case which turns out to also assert claims for age and gender discrimination under two different statutes with different remedial schemes.  Finally, Ms. Williams claims that the defendants were required to remove her claims for age and gender discrimination a year and

a half before the plaintiff even had a right to assert these claims based on documents filed with the EEOC. As explained below, the plaintiff's arguments lack merit and the Motion to Remand should be denied.

I.    **The Civil Cover Sheet Was Not Sufficient to Inform the Defendants to a Substantial Degree of Certainty that the Plaintiff's Claims Arose Under Federal Law**

The plaintiff claims that the defendants' removal of this action was untimely because the defendants should have known that the plaintiff would assert a claim under 42 U.S.C. § 1981, since she cited that statute in her civil cover sheet. But a civil cover sheet does not tell a defendant what claims will <u>actually</u> be asserted in a properly pleaded complaint. The best evidence of that can be found in this case, where plaintiff suggested in her cover sheet that she would assert claims for intentional and negligent infliction of emotional distress, but failed to allege them once she filed a complaint. Simply put, a defendant cannot determine whether a claim arises under federal law on the basis of a single citation made on a cover sheet.

Plaintiff's reading of removal law ignores the "century-old jurisdictional framework governing removal of federal question cases from state into federal courts." <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987). At the heart of this framework is the "well-pleaded complaint rule." <u>Id.</u>; <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, "for removal to be appropriate, a <u>federal question</u> must appear on the <u>face of the complaint</u>." <u>Joyce v. RJR Nabisco Holdings Corp.</u>, 126 F.3d 166, 171 (3d Cir. 1997) (emphasis added); <u>Dukes v. U.S. Healthcare, Inc.</u>, 57 F.3d 350, 353 (3d Cir. 1995). In applying the well pleaded complaint rule, "[t]he Court may not look to . . . other documents aside from the complaint in assessing whether the plaintiffs' claims arise under

federal law." Rauscher v. Ryan, Civ. No. 93-5950, 1994 WL 121006 at *3 (E.D. Pa. Apr. 7,

1994); accord Thomas v. Hanley, Civ. No. 97-2443, 1997 WL 563402 at *6 (E.D. Pa. Sept. 2,

1997).

      "This well-pleaded complaint rule 'makes the plaintiff the master of the claim; he

or she may avoid federal jurisdiction by exclusive reliance on state law.'" Trans Penn Wax

Corp. v. McCandless, 50 F.3d 217, 228 (3d Cir. 1995) (quoting Caterpillar Inc. v. Williams, 482

U.S. 386, 392 (1987)).  In other words, the claim as pleaded in the complaint -- and nothing else

-- must be used to determine whether or not the plaintiff has set forth a claim under federal law.

Even if the plaintiff mentions a federal statute, or a state law claim requires reference to or

interpretation of a federal law, if a plaintiff pleads her complaint in such a way so as to avoid a

claim which actually arises under federal law, there is no federal question jurisdiction.  See

Franchise Tax Board of the State of Cal. v. Construction Laborers Vacation Trust for So. Cal.,

463 U.S. 1, 10-11 (1983) ("[A] right or immunity created by the Constitution or laws of the

United States must be an element, and an essential one, of the plaintiff's cause of action."

(quoting Gully v. First National Bank, 299 U.S. 109, 112 (1936)); Merrell Dow Pharm. v.

Thompson, 478 U.S. 804, 814-17 (1986) (fact that state claim may require interpretation of

federal regulation does not make case removable).

      The defendants could not have determined whether the plaintiff's "well-pleaded

complaint" arose under federal law until she served her Amended Complaint on May 15, 2002.[2]

---

[2]     The plaintiff had filed a different complaint on May 13, 2002 which was not served on
the defendants.  Plaintiff's counsel informed defense counsel that the original complaint
mistakenly failed to include one of the defendants in the action.

The plaintiff's civil cover sheet was not a complaint; it was not even a pleading let alone an "initial pleading."  Philadelphia Loc. R. Civ. P. 205.2(A)(9)(b) ("The information provided in the Civil Cover Sheet shall not be considered a pleading and shall not be admissible at any trial in the matter.").  The civil cover sheet has no effect on the claims the plaintiff would actually assert when she filed a complaint, as plaintiff's abandonment of her putative claims for intentional and negligent infliction of emotional distress will attest.  Similarly, nothing required plaintiff to actually assert a claim under 42 U.S.C. § 1981.[3]  Simply put, until a <u>complaint</u> was filed, there were no claims which arose under federal law which could have been removed.

      The Third Circuit's decision in <u>Foster v. Mutual Fire, Marine & Inland Ins. Co.</u>, 986 F.2d 48 (3d Cir. 1993), did not overrule the century-old well pleaded complaint rule.  The question in that case was whether a writ of summons and accompanying correspondence provided the defendant with adequate notice of <u>diversity</u> jurisdiction so as to start the 30-day clock for removal.  The Third Circuit held that the documents in that case were insufficient to put the defendants on notice of diversity jurisdiction.  <u>Id.</u> at 49.  It did, however, hold that a writ of summons and a praecipe can constitute an "initial pleading" under § 1446(b) where those

---

[3]    The purpose of requiring a civil cover sheet is "to allow the Prothonotary's Office to easily code the complaints that are filed to assist the Court in statistical analysis of case filings.  The categorization is for administrative informational purposes only." Philadelphia Loc. R. Civ. P. 205.2(A), cmt.  If the defendants had removed this case based on the civil cover sheet, the plaintiff, as master of her complaint, could have pleaded around any federal cause of action when she actually filed a complaint in federal court.  And, under Local Rule 205.2 the defendant would have had no right to use the civil cover sheet as evidence that the plaintiff was, in fact, asserting different claims.  Surely the removal statutes were not intended to countenance such a Hobson's Choice.

documents, in and of themselves, "inform[] the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." Id. at 53 (emphasis added).

Diversity cases are not governed by the well-pleaded complaint rule. See, e.g., Buena Ventura v. City of Coatesville, Civ. No. 97-401, 1997 WL 164263 at *1 (E.D. Pa. Apr. 2, 1997) ("Absent diversity of citizenship, the federal court's jurisdiction is governed by the 'well pleaded-complaint rule.'" (emphasis added)). Thus, while a writ of summons may be adequate under some circumstance to provide the defendant with sufficient information to determine that the parties are diverse and the amount in controversy has been met "to a substantial degree of specificity," Foster, 963 F.2d at 63, a civil cover sheet does not, in and of itself, provide adequate notice of federal question jurisdiction because the plaintiff is not bound by anything she asserts about her claims on this sheet. See id. (documents relied upon must "in themselves provide adequate notice of federal jurisdiction"). A defendant's belief or impression that plaintiff intends to assert federal claims does not establish removal jurisdiction. See McCorey v. Elmira Jefferies Funeral Homes, Civ. No. 00-3907, 2001 WL 193681 (E.D. Pa. 2001). It is only when a complaint is filed that the plaintiff is forced to choose among the range of theories of recovery available to her. That is when federal question jurisdiction attaches, if at all, and not before.

While Foster did not hold that a civil cover sheet can constitute an "initial pleading," the plaintiff cites several cases where courts looked to the civil cover sheet to determine whether diversity jurisdiction had been met. See, e.g., Sprague v. American Bar Ass'n, 166 F. Supp.2d 206, 208-09 (E.D. Pa. 2001); Scerati v. Lewellyn Mfg., Inc., Civ. No. 96-

3628, 1996 WL 334376 (E.D. Pa. June 18, 1996); <u>Mangano v. Halina</u>, Civ. No. 97-1678, 1997 WL 697952 (E.D. Pa. Nov. 3, 1997).[4]  While some of these cases address how a civil cover sheet can meet the rule announced in <u>Foster</u>, none of them explain why a cover sheet should be considered an "initial pleading," when the local rule governing that document specifically states that the document is <u>not</u> a pleading.  <u>See</u> Phila. Loc. R. Civ. P. 205.2(A)(9).  Thus, they may well be wrongly decided.

But even assuming that these courts correctly held that a civil cover sheet can constitute an "initial pleading" under <u>Foster</u> in a <u>diversity</u> case, "it is entirely likely that what constitutes an initial pleading in a diversity case is different, and perhaps less formal, than an initial pleading in a federal question case."  James W. Moore, <u>Moore's Federal Practice</u>, §107.30[3][b], at 107-179 (Supp. 2000).[5]  Judge Kelly's decision in <u>Shelton v. Jenny Craig Int'l</u>,

---

[4]     While plaintiff says that courts have found a civil cover sheet to be an initial pleading in both diversity <u>and</u> federal question cases, the case she cites for the proposition that federal question jurisdiction can be found from a civil cover sheet says no such thing.  <u>Lazorko v. Pennsylvania Hospital</u>, Civ. No. 95-6151, 1995 WL 696888 (E.D. Pa. Nov. 22, 1995), a one paragraph order, actually supports the <u>defendants'</u> position.  While the Court mentioned that there was nothing in the civil cover sheet indicating that the claim "involves an allegation of the denial of benefits under an employee welfare plan and consequently would be removable subject to . . . ERISA," it in fact <u>held</u> that it was not until a <u>complaint</u> was filed "setting forth . . . plaintiff's allegations against defendant" that the case was removable.  <u>Id.</u>

[5]     Plaintiff says the concept of "strict construction" of the thirty-day removal period is not "less compelling in federal subject matter jurisdiction cases."  Pl.'s Br. at 9 n.3.  In fact, "[t]he propriety of removal is even more closely guarded and scrutinized when the basis for removal rests on diversity of citizenship grounds."  <u>Potter v. Shoney's, Inc.</u>, 108 F. Supp.2d 489, 496 (M.D.N.C. 1999).  This principle is based on the well settled rule that diversity jurisdiction is considered a less favored form of federal jurisdiction by the courts and Congress because it more directly interferes with the sovereignty of state courts.  "The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitivities,

Civ. No. 98-1982, 1998 WL 288429 (E.D. Pa. June 4, 1998) -- a post-<u>Foster</u> decision -- shows that a <u>federal question</u> case is not removable until a federal claim is asserted in a <u>complaint</u>.

In <u>Shelton</u>, the defendants removed a case within thirty days after the plaintiff filed a response to a summary judgment motion (a document which is clearly "of the type filed with the court") which "stated in a footnote that she intended to seek 'recovery under both state and federal statutes.'" <u>Id.</u> at *1 (emphasis added).  Plaintiff contended that the removal was untimely because she allegedly "notified Defendants of her intent to state a claim under Title VII thorough the complaint, through dual filing with the [EEOC] and the Pennsylvania Human Relations Commission, through the EEOC right to sue letter and through a Settlement Memorandum."  <u>Id.</u>

Judge Kelly held that both parties were wrong and that removal was premature because, under the well-pleaded complaint rule, a federal claim must "appear on the face of Plaintiff's <u>complaint</u> prior to removal."  <u>Id.</u> at *2 (emphasis added).  Neither the plaintiff's argument that she had notified the defendants prior to thirty days, nor the defendants' argument that they were put on notice by the response to the summary judgment motion prevailed, because the court was "bound by the 'well-pleaded complaint rule.'  To date, Plaintiff's well-pleaded

---

and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business."  <u>City of Indianapolis v. Chas Nat'l Bank of City of New York</u>, 314 U.S. 63, 76 (1941).  This is not a case involving purely state law claims which state courts are (1) better equipped to decide and (2) more appropriate forums under our system of dual sovereignty.  To the contrary, this case involves federal claims which belong in federal court, and the removal statutes should be read in the context of Congress' "successive enactments" which favor federal question jurisdiction over diversity jurisdiction.

complaint does not set forth a federal question." Id.  Removal was thus premature and the court

ordered the case remanded, subject to removal only when the complaint was amended to assert a

federal claim.  Id.

Shelton's rejection of the plaintiff's statement of intention to seek relief "under

both state and federal statutes" was consistent with the "well-pleaded complaint rule" and

Foster's requirement that, in order to start the removal period, a pleading must establish the

existence of federal jurisdiction "to a substantial degree of specificity."  For the same reasons, a

statement of intention to file under state and federal theories of recovery made on a civil cover

sheet attached to a writ of summons also should be considered inadequate notice of federal

question jurisdiction.

II.     **Even if the Case Was Removable Upon Service of the Civil Cover Sheet, the
        Defendants' Right to Remove Was Revived When the Plaintiff Asserted New Claims
        for Age and Gender Discrimination in the Amended Complaint**

The plaintiff does not dispute that the civil cover sheet made no mention

whatsoever of claims for age discrimination, gender discrimination, Title VII or the ADEA.  This

is hardly surprising since, as plaintiff admits, no Court would have had jurisdiction to hear those

claims until May 9, 2002 when she obtained "right to sue" letters from the EEOC.  Am. Compl.

at ¶ 5; Mensah v. Resources for Human Dev't, Civ. No. 97-2517, 1997 WL 792901 at *2 (E.D.

Pa. Dec. 23, 1997) ("A complainant must await the agency's determination and a Notice of Right

to Sue letter prior to filing suit in federal court.").  Nevertheless, plaintiff claims that the

defendants were required to remove these claims before they were even asserted.  But even if the

defendants could somehow be deemed to have consented to having the plaintiff's race

discrimination claims under § 1981 tried in state court by not removing based on the civil cover

sheet, the defendants certainly cannot be deemed to have consented to state court jurisdiction on

the very different claims for age discrimination under the ADEA and gender discrimination

under Title VII that were not, and could not have been, asserted until May 2002.

It is well settled that, "if [a] pleading amendment provides a new basis for

removal or changes the character of the litigation so as to make it substantially a new suit," the

defendants are given a new thirty day period to remove the case to federal court.  14C Charles

Alan Wright, et al., Federal Practice & Procedure § 3732, at 321 (1998); see Fletcher v. Hamlet,

116 U.S. 408, 410 (1886) (case becomes removable again if amendment "so changed the

character of the litigation as to make it substantially a new suit, begun on that day"); Johnson v.

Heublein, Inc., 227 F.3d 236, 242 (5th Cir. 2000) ("[A]lthough a defendant has submitted himself

to state court jurisdiction on one cause of action, this does not prevent him from removing the

cause when an entirely new and different cause of action is filed [in the same case]." (alteration

in original)); Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n, 668 F.2d 962, 965

(7th Cir. 1982) (accord); Cliett v. Scott, 233 F.2d 269, 271 (5th Cir. 1956) ("the authorities are

overwhelming that, though a defendant has submitted himself to state court jurisdiction on one

cause of action, this does not prevent his removing the cause when an entirely new and different

cause of action is filed" (footnote omitted)); In re Orthopedic Bone Screw Prod. Litig., MDL No.

1014, 1996 WL 900347 at *1 (E.D. Pa. July 10, 1996) ("Federal courts have held that upon an

amendment providing a new basis for removal, the 30-day period to file a notice of removal or

amended notice of removal begins anew." (citing Cliett and Food Indus., Inc. v. Taco Time Int'l,

Inc., 469 F. Supp. 516 (Utah 1979)).

Plaintiff does not dispute this legal principle.  Instead, she claims that her newly asserted age and gender discrimination claims under Title VII and the ADEA are no different than her race discrimination claims under § 1981 and that it would be "bad policy" to allow the defendants a new thirty day period to remove once these new claims were asserted.  Neither argument has merit.

A.    *Claims Under Title VII and the ADEA for Age and Gender Discrimination Are Substantially a New Suit From Claims for Race Discrimination Under 42 U.S.C. § 1981*

The civil cover sheet accompanying the writ of summons expressly limits the theories to be pursued in state court to remedies available under the Pennsylvania Human Relations Act (the cover sheet contains only a general reference to that statute's provisions, "43 PCSA Section 951, et seq."), and to "42 U.S.C. Section 1981."  Exh. 3.  The only potential federal claim referenced on the civil cover sheet, 42 U.S.C. § 1981, is limited to suits alleging abridgements of a plaintiff's right to make and enforce private contracts on the basis of <u>race</u>.  <u>Bobo v. ITT, Continental Baking Co.</u>, 662 F.2d 340 (5th Cir. 1981), <u>cert. denied</u>, 456 U.S. 933 (1982).  In contrast, the Amended Complaint asserts claims specifically under Title VII and the PHRA for "Race, Gender and Age Discrimination" (Count I), as well as a separate count under the ADEA (Count III).  A section 1981 claim also appears in the Amended Complaint as Count II.  The plaintiff apparently decided not to pursue the state law claims for intentional and negligent infliction of emotional distress referenced in her civil cover sheet.

To the extent that a civil cover sheet's mere citation of a statute can be viewed as providing adequate notice of federal question jurisdiction at all, plaintiff's choice of that

reference essentially limited the range of any <u>federal</u> relief she may have been seeking to claims

of racial discrimination.  Even if <u>Foster</u> is applicable, that court held that, in determining whether

a writ of summons provides sufficient notice of federal jurisdiction, "the relevant test is not what

the defendants purportedly knew, but what [the] documents said."  <u>Foster v. Mutual Fire Marine</u>

<u>& Inland ins. Co.,</u> 986 F.2d 48, 54 (3d Cir. 1993).  What the plaintiff's papers <u>said</u> -- and, indeed,

the most they could have been reasonably read to say  -- was that Ms. Williams intended to

pursue unspecified claims under the Pennsylvania Human Relations Act and, perhaps, a federal

claim for race discrimination pursuant to 42 U.S.C. § 1981, but without any explanation of either

which legal theories would be pleaded or what the factual basis for any of her claims might be.

Even assuming that defendants consented to having the matters referenced on the

civil cover sheet adjudicated in state court, that does not mean that the defendants also would

have consented to having Ms. Williams' Title VII and ADEA claims adjudicated there.  As

Judge Joyner has pointed out, "race discrimination and gender discrimination are two very

different things, requiring different showings, statistics, expert witnesses, and everything else

that goes into a trial."  <u>Johnston v. City of Philadelphia</u>, 158 F.R.D. 352, 354 (E.D. Pa. 1994).

Ms. Williams' cannot treat her claims as a kind of jurisprudential gumbo that obscures the

elements, defenses and evidentiary issues unique to each.

Judge Joyner's observation is consistent with that of any number of federal court

decisions holding that race, gender and age claims raise distinct issues, and that notice of one

type of claim does not automatically provide legally sufficient notice of other discrimination

claims that may be asserted by the same plaintiff.  It is for reasons similar to these that courts are

cautious about allowing plaintiffs to adjudicate discrimination claims they did not raise at the administrative level.  See, e.g., McDonald v. Corrections Corp . of America, 181 F. Supp. 2d 1274, 1279 (D.N.M. 2002) (gender discrimination claims are "distinct from," and not reasonably related to claims of age or national origin discrimination, or retaliation); Spain v. Colonial Penn Ins. Co., Civ. No. 97-4010, 1997 WL 773053 (E.D.Pa. Dec. 12, 1997) (dismissing plaintiff's gender discrimination claim for failure to exhaust administrative remedies).  And courts have expressly held that a plaintiff's race claims are not necessarily related to claims of age or gender discrimination that she might assert.  See, e.g., Crawford v. Bank of America, 986 F. Supp. 506, 508 (N.D. Ill. 1997) ("An allegation of race discrimination is not 'like or reasonably related to' an allegation of sex discrimination");  Beale v. GTE California, 999 F. Supp. 1312, 1320 (C.D. Calif. 1996) (rejecting the argument that race and national origin claims are like or reasonably related to age or gender discrimination claims), aff'd, 191 F.3d 1173 (9th Cir. 1998); Williams v. Kansas Gas and Electric Co., 805 F. Supp. 890, 900 (D. Kan. 1992) (claims for gender discrimination not reasonably related to race discrimination claims).

Defendants' alleged consent to proceeding in state court on Ms. Williams' section 1981 claim also would not include consent to litigating Title VII or ADEA claims there because of differences among the remedies.  Section 1981 does not have the exhaustion requirements that Title VII and the ADEA do.  The regulatory framework governing such claims determines what claims can and cannot be pursued, and potentially limits the range of evidence that can be admitted at trial.  It is simply unreasonable to suggest that defendants would willingly have waived the expertise of the federal courts in adjudicating claims brought under these statutes.

Accordingly, by asserting two brand new federal claims in the Amended Complaint -- a claim for gender discrimination under Title VII and a claim for age discrimination under the ADEA -- plaintiff has essentially begun a new suit.  This new lawsuit is substantially different than the one cryptically described in the civil cover sheet accompanying the writ of summons.  Johnson, 227 F.3d at 242.

B.    *The Policy Behind the Removal Statute Would Be Furthered by Allowing Removal, Not by Remanding.*

Plaintiff claims, however, that removal should be denied in this case because the defendants have "used removal in this case to make an end run around Ms. Williams' efforts in the state court . . . [and] have continued to use removal to tactical advantage."  Pl.'s Br. at 14. That argument is baseless.  While it is true that the Court should consider the policy reasons behind § 1446's 30-day limitation in making decisions in individual cases,  see Wilson, 668 F.2d at 966, those policy favor removal, not remand in this case.

The dual factors fostered by the thirty day requirement identified in Wilson are: "to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court."  Wilson, 668 F.2d at 965.

The plaintiff all but concedes in her brief that almost nothing happened in this case prior to March 2002.  Pl.'s Br. at 4 (noting that the only thing that happened between

November 2000 and March 2002 was that plaintiff served interrogatories, which were "halted . . . until the conclusion of mediation"). While the plaintiff filed her writ of summons in November 2000, the parties engaged in no litigation between November 2000 and March 2002, while they attempted to resolve the dispute between the parties outside of litigation. As soon as those talks broke down, the defendants asked the plaintiff to promptly file a complaint. Exh. 4.[6] When she did not do so, they formally ruled her to file a complaint. Exh. 5. The <u>only</u> motion decided by the Court of Common Pleas before removal was an administrative motion to admit defendants' New York counsel pro hac vice. While a month and a half of discovery took place in state court while defendants waited for the plaintiff to finally file a complaint, there is no reason that this discovery cannot be used now that the case is in federal court, and there is certainly no reason why the case needs to be "started over." <u>Wilson</u>, 668 F.2d at 965.

Remarkably, the plaintiff argues that the defendants acted "tactically" by <u>not</u> "testing the waters" in state court -- by removing the case <u>before</u> the Court decided any substantive motions, including several contemplated discovery motions and a motion by plaintiff for extension of the discovery deadline. Pl.'s Br. at 14. The defendants are not blessed with

---

[6]     Plaintiff, relying on a footnote in the <u>Foster</u> decision, claims that the defendants should have "ruled" the plaintiff to file a complaint earlier, and their failure to do so requires remand. First of all, the <u>Foster</u> footnote was talking about <u>diversity</u> cases: "[w]e recognize that in cases in which federal jurisdiction arises due to diversity, the defendant may be given notice of removability prior to being able to ascertain the nature of the case." <u>Foster</u>, 986 F.2d at 54 n.6. As explained above, a defendant cannot be given notice of removability in a <u>federal question</u> case until he is able to "ascertain the nature of the case" from a complaint, because it is the nature of the claims in the case which determines whether a claim is federal in nature. Moreover, even if the defendants had ruled the plaintiff to file her complaint on March 22nd that complaint <u>could not</u> have included claims under Title VII and the ADEA because the plaintiff did not have right to sue letters.

psychic powers -- they could not have "wait[ed to] see how [they were] faring in state court" by not waiting to see how the Court would rule on substantive matters.  Wilson, 668 F.2d at 965.  In fact, the defendants intentionally removed the case before the Court of Common Pleas decided these motions because they can and should be decided by this Court after removal.  No doubt if the defendants had waited for these motions to be resolved, the plaintiff would now be claiming that the defendants waived their right to removal.

III.    **The Complaints Ms. Williams Filed with the PHRC and EEOC Did Not Make the Case Removable Earlier**

Finally, plaintiff says that the complaints she filed with the PHRC and the EEOC were sufficient to put the defendants on notice of her Title VII and ADEA claims, and that the defendants should therefore have removed earlier.  There are two fundamental flaws in this argument.

First, the plaintiff cites no authority for the proposition that an EEOC complaint or PHRC complaint is an "other paper," which can trigger a defendants' obligation to remove a case.[7]  In fact, at least one Judge in this district already has held that an EEOC complaint does

---

[7]     Instead, plaintiff cites Cabibbo v. Einstein/Noah Bagel Partners, L.P., 181 F. Supp.2d 428 (E.D. Pa. 2002), a diversity case, for the proposition that answers to interrogatories are sufficient to start the removal clock as an "other paper" under 28 U.S.C. § 1446(b).  Assuming that Judge Pollak correctly rejected Judge Buckwalter's conclusion in Textile Chem. Co. v. Aetna Cas & Sur. Co., Civ. No. 97-2142, 1997 WL 537408 (E.D. Pa. Aug. 5, 1997), when Judge Pollak held that Foster's requirement that a document be of a type filed with the court does not apply to the second paragraph of § 1446(b), the case does not help the plaintiff.  The EEOC complaints in this case not only were not filed with the court, they were totally unrelated to the litigation because the plaintiff could not have asserted a claim under Title VII or the ADEA until those administrative complaints were adjudicated.  In other words, these documents said only what a claim might be, not what it was.

not start the removal clock.  Shelton v. Jenny Craig Int'l, Civ. No. 98-1982, 1998 WL 288429 at

*2 (E.D. Pa. June 4, 1998) (even if defendant is informed that plaintiff might assert federal

claims by filing of EEOC complaint, Title VII case cannot be removed until the claims are

actually asserted on the face of a well-pleaded complaint).

More importantly, however, as plaintiff admitted in prior correspondence with

defendants, "those Complaints were filed precisely for the purpose of obtaining the right-to-sue

letters needed to file this lawsuit."  Exh. 6.  The federal court could not have had jurisdiction

over the Title VII and ADEA claims until May 9, 2002.  Because the federal court could not

have had original jurisdiction over the plaintiff's ADEA and Title VII claims until May 9, 2002,

those claims in fact could not have been removed until just days before the defendants removed

them.  See Davis v. North Carolina Dep't of Correction, 48 F.3d 134, 138-40 (4th Cir. 1995)

(court lacked removal jurisdiction because it lacked original jurisdiction due to the fact, inter

alia, that no right to sue notices were issued by the EEOC).

Thus, even if the EEOC complaints put the defendants on notice that the plaintiff

had some inchoate claim for age and gender discrimination, the defendants had no idea what

would become of these unasserted claims until the right to sue letters were issued and the claims

were added to this lawsuit.  If the EEOC found the claims were meritorious, the EEOC could

have pursued the claims itself.  See, e.g., EEOC v. Waffle House, Inc., 122 S. Ct. 754 (2002).

The plaintiff could have brought separate lawsuits on the right to sue letters in federal court.  Or,

depending on the results of the EEOC investigation, she could have decided not to pursue her

claims at all.  The plaintiff's effort to deprive the defendants of their right to a federal forum because they cannot predict the future should be rejected.

The plaintiff's argument that the defendants should have removed the non-existent Title VII and ADEA claims as soon as complaints were filed with the EEOC would also undermine the entire policy Congress intended the EEOC to serve.  "Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit."  Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974); see Carson v. American Brands, Inc., 450 U.S. 79, 86 n.14 (1981).  If a complainant's amendment of her EEOC complaint could start the removal clock under the circumstances presented in this case, and a defendant were forced to remove and begin litigating before the administrative process had run its course, the policy favoring pre-trial resolution of discrimination claims would be undermined.

Plaintiff's interpretation of § 1446 "other paper" provision invites attempts to manipulate the EEOC and Pennsylvania Human Relations Commission processes by the clever commencement of state actions by writ of summons.  If Ms. Williams' interpretation of the law were correct, defendants would have been required to remove and commence litigation on her §1981 race claim, while her other claims remained with the PHRC.  At best, such a result promotes piecemeal litigation of discrimination claims.  At worst, the reconciliation function of

administrative proceedings would have been rendered superfluous, as the parties turned their attentions to discovery and the litigation of claims.

A complaint with the EEOC or PHRC is designed to give the parties an opportunity avoid litigation, not commence it.  In this case, the defendants did just what they were supposed to do.  In response to the plaintiff's complaints with the PHRC and the EEOC, defendants engaged in good faith efforts to resolve the dispute.  The plaintiff now seeks to deprive the defendants of a federal forum for doing exactly what Congress intended and, presumably, because she also fully participated in the settlement negotiations that took place before litigation began, what she wanted.  Defendants respectfully submit that federal removal law should not be read to facilitate such a result.

## <u>CONCLUSION</u>

The defendants removed this case one week after the plaintiff filed her Amended Complaint which first set forth the federal claims she was pursuing in this action.  The case properly belongs in federal court, and the defendants removal was timely.  The plaintiff's Motion to Remand should be denied.


Respectfully Submitted,


PROSKAUER ROSE LLP


By: _____
     Bettina B. Plevan (BP-7460)
     1585 Broadway
     New York, New York 10036
     (212) 969-3065

     Vernon L. Francis
     Michael E. Baughman
     Dechert Price & Rhoads
     4000 Bell Atlantic Tower
     1717 Arch Street
     Philadelphia, PA  19103
     (215) 994-4000

     Attorneys for Defendants

Dated:  July 8, 2002

## CERTIFICATE OF SERVICE

I, Michael E. Baughman, hereby certify that I caused to be served on July 1, 2002,

a true and correct copy of the Memorandum of Law in Opposition to Plaintiff's Motion to

Remand by hand delivery upon the following:

Patricia P. Pierce, Esquire
Willig Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Alice Ballard, Esquire
225 South 15th Street
Suite 1700
Philadelphia, PA 19102

Attorneys for Plaintiffs


_____

Michael E. Baughman